CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 0 2 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| NATHAN NEWHARD,<br>　　　　　　　　　　　　*Plaintiff,*<br><br>v.<br><br>MATT BORDERS, UNNAMED TOWN OF CULPEPER POLICE OFFICERS 1-100, SCOTT BARLOW, *and* TOWN OF CULPEPER POLICE DEPARTMENT,<br>　　　　　　　　　　　　*Defendants.* | CIVIL NO. 3:09CV00020<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the Motions to Dismiss filed by Defendants Town of Culpeper Police Department, Police Chief Scott Barlow, and the Unnamed Town of Culpeper Police Officers (docket no. 11) and Sergeant Matt Borders (docket no. 13), as well as Plaintiff Nathan Newhard's Motions for Extension of Time (docket no. 26, 28). As explained more fully below, I will grant Newhard's Motions for Extension of Time and consider his arguments in opposition to the Motions to Dismiss but also grant the Defendants' Motions to Dismiss Newhard's Amended Complaint because each of the officers are entitled to qualified immunity for the alleged misconduct and the Town of Culpeper may not be held vicariously liable for the officers' misconduct under the facts alleged.

I. BACKGROUND[1]

Nathan Newhard and his former girlfriend, Jessie Casella, have filed separate actions against the Town of Culpeper Police Department ("Town") and several of its officers, including Police Chief Scott Barlow, Sergeant Matt Borders, and Unnamed Town of Culpeper Police

---

[1] Except where otherwise noted, the facts recited here are derived from Casella's Amended Complaint (docket no. 2). As required in the analysis of dismissal motions, the alleged facts are assumed to be true. *See, e.g., Edwards*

Officers 1-100 ("Unnamed Officers"). According to Newhard's Amended Complaint, which alleges violations of 42 U.S.C. § 1983, Newhard was arrested by a Town police officer in the early morning hours of March 30, 2008 and subsequently searched without a warrant "at some point" after the arrest. During the search of Newhard's person, an Unnamed Officer discovered a cell phone, which Casella allegedly lent to Newhard on or around February 1, 2008 "for his personal use." The Unnamed Officer allegedly opened the pictures folder of the cell phone, which contained multiple nude pictures of Casella and Newhard in "sexually compromising positions." Newhard claims that the explicit pictures were eventually shared with Sergeant Matt Borders, who then allegedly alerted several additional Unnamed Officers, deputies, and members of the public "that the private pictures were available for their viewing and enjoyment." According to the Amended Complaint, several Unnamed Officers who were not in any way associated with Newhard's arrest and an acquaintance unassociated with the police department later viewed the pictures, causing Newhard paranoia and anxiety over how widespread the transmission of the images had become.

As a result of the alleged incident, Newhard claims he was non-recommended for continued employment with the Culpeper school system, where he was employed before the arrest. He filed suit in this Court on March 24, 2009. On July 31st, the Defendants filed their Motions to Dismiss. Although the Pretrial Order (docket no. 15) required Newhard to file response briefs by August 14th, he did not file his Memoranda in Opposition to the Defendants' Motions to Dismiss until August 17th.[2] The Defendants timely filed rebuttal briefs, arguing in part that their Motions to Dismiss should be considered unopposed in light of Newhard's

---

*v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).
[2] Counsel for Newhard filed the Memorandum in Opposition to Sergeant Borders' Motion to Dismiss on August 17th. Counsel also incorrectly re-filed that same Memorandum as the Memorandum in Opposition to the other Defendants' Motion to Dismiss on the same date. After notification from the Court, counsel for Newhard re-filed the

2

violation of the Pretrial Order. In response, Newhard filed Motions for Extension of Time, requesting that the Court consider his Memoranda in Opposition timely filed for good cause shown.

## II. MOTIONS FOR EXTENSION OF TIME

As summarized above, Newhard filed his Memoranda in Opposition to the Defendants' Motions to Dismiss three days later than required under the Pretrial Order and later filed Motions for Extension of Time, requesting that the Court consider the Memoranda in Opposition as timely filed for good cause shown.

When an act must be done within a specified time, a court may, for good cause, extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Although Newhard's response briefs were filed three days late, the Defendants were able to file their respective rebuttal briefs well before the hearing on the Motions to Dismiss – giving the Court ample time to assess the merits of each of the parties' arguments. Because Newhard appears to have acted in good faith and his late filing has not prejudiced the Defendants or negatively impacted the judicial proceedings at this stage, his Motions for Extension of Time will be granted. I will consider the merits of his Memoranda in Opposition in disposing of the Motions to Dismiss.

## III. MOTIONS TO DISMISS

Newhard alleges that the Town, Sergeant Borders, and the Unnamed Officers deprived him "of his federal Constitutional right to be free from the invasion of his privacy…under the Fourth Amendment," in violation of 42 U.S.C. § 1983.[3] He also alleges that the Town and Chief

---

correct Memorandum in Opposition to the other Defendants' Motion to Dismiss on August 19th.
[3] Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States." *Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "One alleging a violation of section 1983 must prove that the

3

Barlow violated § 1983 by recklessly failing to adequately supervise, train, and discipline the Town police officers "regarding the inappropriate handling of third-party private cellular telephone content during a warrantless search and arrest procedure." The Defendants contend that Newhard's § 1983 counts should be dismissed because: (1) the Town cannot be vicariously liable for the officers' alleged conduct under the circumstances, (2) the Town officers are entitled to qualified immunity, and (3) the Amended Complaint fails to allege any violation of Newhard's constitutional privacy rights.

## A. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require

---

charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2)

4

heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

## B. Vicarious Liability of Town of Culpeper

The Town contends that it may not be held vicariously liable for the allegedly unconstitutional actions of its officers because the Amended Complaint fails to properly allege a Town "policy" or "custom" demonstrating deliberate indifference to the constitutional rights of its residents. "[M]unicipal liability under § 1983 may not be predicated solely upon a respondeat superior theory. Liability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). "While municipal 'policy' is found most obviously in municipal ordinances, regulations and the like which directly command or authorize constitutional violations, it may also be found in formal or informal *ad hoc* 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Spell v. McDaniel*, 824 F.2d 1380, 1385-86 (4th Cir. 1987) (citations omitted). "'Policy' in this context implies most obviously and narrowly a 'course of action consciously chosen from among various alternatives' respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." *Id.* at 1386. The existence of "custom," in the language of § 1983, "may be found in 'persistent and widespread…practices of [municipal] officials [which] although not authorized by written law, [are] so permanent and well-settled as

---

that the deprivation was performed under color of the referenced sources of state law found in the statute." *Id.* (citing

to [have] the force of law.'" *Id.* (quoting *Monell*, 436 U.S. at 690-91). A custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Id.* at 1387.[4]

"[A] policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan*, 743 F.2d at 229-30 (citations omitted). A policy or custom giving rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id.* at 230. Only where a municipality's conduct shows a "deliberate indifference" to the rights of its inhabitants can the conduct be properly thought of a city "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

Under the above standards, Newhard fails to sufficient facts that would support the existence of a Town policy or custom actionable under § 1983. Count I of the Amended Complaint entirely fails to mention any Town policy or custom, and Count II contains only the conclusory allegation that the Town "implemented and promulgated a departmental policy, practice and custom of not enforcing the federal privacy rights of third-party non-arrestees, demonstrating deliberate indifference to such privacy rights." There are no facts alleged in the

---

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)).
[4] "Actual knowledge may be evidenced by recorded reports to or discussions by a municipal governing body. Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." *Id.*

6

Amended Complaint that could, for example, support a conclusion that the Town's governing officials were actually or constructively aware of persistent and widespread constitutional deprivations by Town police officers. Nor are there any allegations of other, similar constitutional deprivations at the hands of Town officers. Thus, aside from Newhard's conclusory allegations of a Town "policy, practice and custom" of violating federal privacy rights, nothing alleged in the Amended Complaint can support a conclusion that the alleged incident was anything more than an isolated event. Because a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555, Counts I and II of Newhard's Amended Complaint will be dismissed as against the Town of Culpeper.

## C. QUALIFIED IMMUNITY

Chief Barlow, Sergeant Borders, and the Unnamed Officers argue that Newhard's § 1983 counts should be dismissed because they are each entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). A government official is protected by the doctrine regardless of whether his error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citing *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 1068 (2004) (Kennedy, J., dissenting)).

Prior to this year, the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. *Id.* at 815. A court was required to first decide

whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). If the plaintiff satisfied that first step, then the court proceeded to "decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* (citing *Saucier*, 533 U.S. at 201). Today, the two-step progression is no longer mandatory, and "[t]he judges of the district courts and the courts of appeal should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

It is unnecessary to address the broader question of whether the various officers' alleged misconduct violated Newhard's constitutional rights because, regardless of whether those rights existed and were actually violated, none of those rights were "clearly established" at the time of the alleged misconduct.[5] As such, the Unnamed Officers, Chief Barlow, and Sergeant Borders should all entitled be to qualified immunity from Newhard's § 1983 claims.

First, the Unnamed Officer who allegedly searched through Newhard's phone after the arrest is entitled to qualified immunity because Newhard's constitutional right to be free from such a search under the Fourth Amendment was not "clearly established" at the time of the alleged misconduct. As an initial matter, it is well established that, subsequent to an arrest, an officer may conduct a warrantless search of an arrestee's person and the area "within his

---

[5] There seems to be some confusion among the parties as to whether Newhard is alleging that the Town officers violated his right to be free from unreasonable searches and seizures under the Fourth Amendment or his broader constitutional right to privacy. *See Carroll v. Parks*, 755 F.2d 1455, 1456-57 (11th Cir. 1985) (explaining that although there is no generalized right of privacy recognized by the Constitution, particular 'zones of privacy' recognized as meriting protection include "the right to be free from unreasonable search and seizure, and the right to make personal decisions regarding marriage, contraception, procreation, and family relationships") (citing *Paul v. Davis*, 424 U.S. 693, 712-14, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). The Defendants address both possibilities in their briefs. As to the Unnamed Officer who allegedly conducted the initial search of the cell phone and discovered the pictures, I will address the right to be free from unreasonable searches and seizures under the Fourth Amendment. As to Sergeant Borders and the other Unnamed Officers who did not participate in the search but later viewed and disseminated the pictures, I will address the constitutional right to privacy.

8

immediate control" "in order to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape," or to prevent the concealment and destruction of evidence, without running afoul of the Fourth Amendment. *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). Furthermore, a post-arrest, pre-incarceration inventory search is another "well-defined exception to the warrant requirement." *Illinois v. Lafayette*, 462 U.S. 640, 644, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983). In the Internet age, the extent to which the Fourth Amendment provides protection for the contents of electronic communications (such as images stored on a cell phone) in a search incident to arrest or inventory search is an open question. *See Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 904 (9th Cir. 2008). The Fourth Circuit has held that "officers may retrieve text messages and other information from cell phones and pagers seized incident to an arrest" in order to preserve evidence, *see United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009), and other courts have reached similar conclusions. *See, e.g., United States v. Finley*, 477 F.3d 250, 259-60 (5th Cir. 2007); *United States v. Santillan*, 571 F. Supp. 2d 1093, 1102 (D. Ariz. 2008); *United States v. Deans*, 549 F. Supp. 2d 1085, 1093-94 (D. Minn. 2008). Under different circumstances, however, other courts have invalidated warrantless searches of cell phones incident to arrest. *See, e.g., United States v. McGhee*, 2009 U.S. Dist. LEXIS 62427 (D. Neb. July 21, 2009); *United States v. Quintana,* 594 F. Supp. 2d 1291, 1301 (M.D. Fla. 2008). But given the Fourth Circuit's approval of the retrieval of text messages and other information from a cell phone seized incident to an arrest in *Murphy* and the lack of a clear rule from the Supreme Court or other lower courts regarding with the permissible scope of a search of a cell phone incident to arrest, I cannot conclude that the search conducted by the Unnamed Officer in this case violated any "clearly established" Fourth Amendment right of Newhard's, or that the purported illegality

9

of the search "would have been evident to a reasonable officer based on existing caselaw." *Rogers v. Pendleton*, 249 F.3d 279, 285-86 (4th Cir. 2001) (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)).[6] Under the circumstances alleged in the Amended Complaint, a reasonable officer could have believed that the Unnamed Officer's search of the cell phone after Newhard's arrest "comported with the Fourth Amendment" as either a valid search incident to arrest or inventory search. *Anderson v. Creighton*, 483 U.S. 635, 637-41, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). While officers are not protected by qualified immunity when they are 'plainly incompetent or...knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986), "in gray areas, where the law is unsettled or murky, qualified immunity affords protection to an officer who takes an action that is not clearly forbidden – even if the action is later deemed wrongful." *Rogers*, 249 F.3d at 286. Accordingly, the Unnamed Officer who allegedly conducted the initial search of the phone's contents is entitled to qualified immunity.

Chief Barlow, who allegedly failed to adequately train the Town officers, is also entitled to qualified immunity. Since, for the reasons just explained, the search of Newhard's cell phone did not violate any "clearly established" right under the Fourth Amendment, Barlow cannot be held liable for failing to train the Town officers to prevent the occurrence of the type of search alleged in the Amended Complaint. Count II of Newhard's Amended Complaint will be dismissed as to Chief Barlow.

---

[6] In a 5-4 decision, the Supreme Court recently held that police may search a vehicle incident to arrest only when they have reason to believe that the arrestee could either access the vehicle and destroy evidence or that the vehicle contained evidence of the specific offense that was the subject of the arrest. *Arizona v. Gant*, __ U.S. __, 129 S. Ct. 1710, 1721, 173 L. Ed. 2d 485 (2009). Although *Gant* could possibly be interpreted to stand for the proposition that police may not search a *cell phone* incident to an arrest without a warrant unless they have reason to believe the arrestee can access the phone and destroy relevant evidence or that the phone contains evidence of the specific offense that is the subject of the arrest, the fact that the Court was so split on the issue and the fact that the opinion came out over one year after the incident alleged in Amended Complaint occurred supports a finding that any constitutional right Newhard may have had to be free from the alleged search was not "clearly established."

Finally, Sergeant Borders, who allegedly later alerted several Town officers and members of the pictures, and the other Unnamed Officers, who allegedly viewed the pictures on the cell phone, are entitled to qualified immunity because, whether or not Newhard had a constitutional right to privacy in the nude pictures, that right was not "clearly established" at the time of the alleged misconduct. While the constitutional right to privacy extends to "the individual interest in avoiding disclosure of personal matters," *Whalen v. Roe*, 429 U.S. 589, 599-600, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977), "there is no general constitutional right to privacy." *Edwards v. City of Goldsboro*, 178 F.3d 231, 253 (4th Cir. 1999). The Fourth Circuit has held that the right to privacy is "limited to matters of reproduction, contraception, abortion, and marriage," and has declined to recognize such a right in cases not implicating those particular matters. *Id.* (citing *Condon v. Reno*, 155 F.3d 453, 464 (4th Cir. 1998)). Furthermore, other circuits have declined to recognize a constitutional right to privacy in circumstances very analogous to this case. In *Davis v. Bucher*, for example, the Ninth Circuit upheld a district court's granting of summary judgment on an inmate's constitutional invasion of privacy claim against a correctional officer who found several nude photographs of the inmate's wife in an envelope during an inventory search at the jail and subsequently shared the photographs with at least two other inmates. 853 F.2d 718, 719 (9th Cir. 1988). The officer also later made gratuitous comments about the inmate's wife's physical anatomy. *Id.* The court declined to recognize a constitutional invasion of privacy claim under the circumstances, reasoning that although "the Constitution protects against state disclosures of personal information in some instances," the inmate's allegations presented "a controversy squarely within the ambit of state tort law protections." *Id.* at 720. Similarly, in *Carroll v. Parks*, the Eleventh Circuit affirmed a district court's dismissal of a high school student's constitutional invasion of privacy claim against a school board and school officials

who allegedly permitted a photograph in which the student's "sexual organ was exposed" to be printed and circulated in the school newspaper. 755 F.2d 1455, 1456 (11th Cir. 1985). The photograph was also allegedly "accompanied by a lurid, prurient caption." *Id.* Agreeing with the district court's conclusion that any plausible claim would arise in tort and not under privacy rights protected by the Constitution, the Eleventh Circuit explained:

> Although some may find the conduct of the appellees in participating in the distribution of the photograph or in refusing to halt distribution of the photograph to be deplorable, reprehensible, and insensitive, appellant simply has not stated a federal constitutional deprivation. We are left to wonder what legitimate purpose these appellees, school officials, (charged with the responsibility for the welfare of youngsters and the inculcation of respect for common decency) can offer to justify their conduct. Nevertheless, the district court is right: If a cause of action exists on these facts, it arises in tort and must be pursued in another forum.

*Id.* at 1457.

Both of these cases indicate that Newhard's claim to a constitutional right of privacy in the images on the cell phone is dubious, at best. It is unnecessary, however, to rule on that particular question. Even if such a right existed, it was not "clearly established" at the time of the alleged misconduct, especially given: (1) the Fourth Circuit's strict interpretation of the scope of the right of privacy in *Edwards*, and (2) the outright rejection of a constitutional right to privacy under analogous circumstances in *Bucher* and *Carroll*. As such, Sergeant Borders and the other Unnamed Officers are entitled to qualified immunity for the alleged misconduct. While their alleged actions were certainly "deplorable, reprehensible, and insensitive" and may fall within the ambit of state tort law, they did not violate any constitutional rights that were "clearly established" at the time. Consequently, Count I of Newhard's Amended Complaint will also be dismissed as to Sergeant Borders and Unnamed Town Police Officers 1 – 100.

12

Case 3:09-cv-00020-NKM-BWC   Document 33   Filed 09/02/09   Page 12 of 14   Pageid#: 144

## IV. Conclusion

While the alleged conduct of Sergeant Borders and the Unnamed Town Police Officers was irresponsible, unprofessional, and reprehensible, Newhard has failed to plead facts sufficient to state any plausible claims for relief under § 1983. The Town may not be held vicariously liable for the alleged wrongful acts of its officers because Newhard fails to plead any facts that would support a conclusion that the Town's governing officials were actually or constructively aware of persistent and widespread constitutional deprivations by Town police officers. The Unnamed Officer who allegedly searched through the cell phone did not violate any "clearly established" constitutional right of Newhard's under the Fourth Amendment and is thus entitled to qualified immunity. Similarly, Chief Barlow cannot be held liable for failing to prevent the type of wrongful search alleged in the Amended Complaint, as the search did not violate any "clearly established" constitutional rights. Finally, whether or not Newhard had a constitutional privacy right in the cell phone pictures, that right was not "clearly established" given the Fourth Circuit's pronouncements on the constitutional right to privacy. Sergeant Borders and the other Unnamed Officers are thus entitled to qualified immunity for the alleged viewing and dissemination of the pictures. Accordingly, Count I will be dismissed as against the Town, Borders, and the Unnamed Officers, and Count II will be dismissed as against the Town and Barlow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

It is so **ORDERED**.

Entered this 2nd day of September, 2009.

_Norman K. Moon_ (signature)
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

14